# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| MATTHEW STEPHEN AKINS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2:15-cv-4096NKL |
| vs. | ) | |
| | ) | Jury Trial Demanded |
| DANIEL K. KNIGHT, in his | ) | |
| official and individual capacity, AND | ) | |
| | ) | |
| STEVEN BERRY, in his official and | ) | |
| individual capacity, AND | ) | |
| | ) | |
| BRENT NELSON, in his official and | ) | |
| individual capacity, AND | ) | |
| | ) | |
| KENNETH M. BURTON, in official | ) | |
| capacity, AND | ) | |
| | ) | |
| CITY OF COLUMBIA | ) | |
| State of Missouri, and | ) | |
| | ) | |
| BOONE COUNTY, a political | ) | |
| subdivision of the State of Missouri | ) | |
| | ) | |
| ERIC HUGHES, in his official and | ) | |
| individual capacity, and | ) | |
| | ) | |
| ROB SANDERS, in his official and | ) | |
| individual capacity, and | ) | |
| | ) | |
| ROGER SCHULDE, in his official | ) | |
| and individual capacity, and | ) | |
| | ) | |
| MICHAEL PALMER, in his official | ) | |
| and individual capacity, and | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

COME NOW Plaintiff, by and through his undersigned counsel, and in support of his Complaint against the Defendants, states as follows:

1. Plaintiff  MATTHEW STEPHEN AKINS is a citizen of the state of Missouri and a resident of Boone County, Missouri, was over the age of twenty-one years at all times pertinent to this litigation, is an accountability advocate and citizen journalist with CITIZENS FOR JUSTICE - a police misconduct watchdog organization reporting on police-citizen interactions by investigating and reporting on misconduct complaints.

2. GREGORY ALLAN RODGERS is a citizen of the state of Missouri and a resident of Boone County, Missouri, and was at all times pertinent to this litigation and had filed a misconduct complaint against three Columbia Police officers.  The misconduct complaint was the "catalyst" for law enforcement retaliation against him via the dissemination of slanderous rumors and false allegations of terroristic threats and false arrest for unlawfully concealing a firearm upon his premises where he had a legal right to carry concealed without a permit. Furthermore, Mr. Rodgers held a valid permit that allowed him to lawfully conceal a firearm-a permit that he previously produced and displayed to CPD officers. Mr.  Rodgers also informed the arresting CPD officers about his valid permit at the time of his seizure.

3. ROBERT DEWAYNE FRANKLIN is an African-American and was a resident of Boone County, Missouri when significant events related to this

litigation occurred.  Mr. Franklin is currently a resident of Logan County, Oklahoma and was retaliated against by the Columbia Police Department and Boone County Prosecutor's Office for refusing to consent to law enforcement's request to search his home without a warrant.  His son was asserted  for the objectively unreasonable allegations that his son Raymond D'Sean Franklin by old mail from a thousand miles away exercised "dominion or control" over his father's pistol. No objectively reasonable police officer could believe that by a very old mail with Raymond's name upon it across the room for Robert's lawfully possessed firearm that Raymond exercised "dominion or control" over his father's pistol from a thousand miles away.  It was alleged in a sworn probable cause statement and criminal complaint that Raymond was unlawfully in possession of father's firearm in Missouri. While Raymond resided in the state of North Carolina.

4. RAYMOND D'SEAN FRANKLIN, is an African-American and is a citizen of the state of Missouri, and is currently a resident of Oklahoma but was previously a resident of Boone County, Missouri, and was at some of the times pertinent to this litigation.  Prior to returning as a citizen of the state of Missouri, when some of the events related to this litigation occurred, Raymond Franklin was a resident and citizen of Wake County, North Carolina for at least November and December 2008.

5.  Dr. ALLAN RODGERS, PhD., is a citizen of the state of Missouri and a resident of Boone County, Missouri, at all times pertinent to this litigation.

6. Defendants KENNETH M. BURTON, ERIC HUGHES, ROB SANDERS, ROGER SCHULDE and MICHAEL PLAMER are citizens of the state of Missouri and, at all times pertinent to this litigation, were police officers employed by the City of Columbia, Missouri.

7. Defendant DANIEL K. KNIGHT is a citizen of the state of Missouri and, at all times pertinent to this litigation, the elected Boone County Prosecutor.

8. Defendant STEVEN BERRY was a citizen of the state of Missouri and, at all times pertinent to this litigation, employed as an Assistant Boone County Prosecutor.

9. Defendant BRENT NELSON was a citizen of the state of Missouri and, at all times pertinent to this litigation, employed as an Assistant Boone County Prosecutor.

10. Defendant CITY of COLUMBIA is a municipal corporation of a local government located in the state of Missouri, and a political subdivision of the State of Missouri, and has waived its right to assert sovereign immunity by obtaining liability insurance pursuant to RSMo. 537.610 and/or RSMo. 71.185 (2000)[1].

11. Defendant BOONE COUNTY is a local county government and a political subdivision located in the state of Missouri, and has waived its right

---

[1] All references to RSMo. are to RSMO (2008) unless otherwise noted.

to assert sovereign immunity by obtaining liability insurance pursuant to RSMo. 537.610 and/or RSMo. 71.185.

12. This Court has personal jurisdiction over all parties in this litigation. Therefore, this Court's jurisdiction is proper pursuant to the First, Second, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the Missouri Constitution Article I, Section 23 and Missouri law.

13. Claims in this litigation are brought pursuant to the First, Second, Fourth, Sixth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section(s) 1983 and Missouri law. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. Section(s) 1331 and 28 U.S.C 1367 and Missouri law.

14. A substantial part of the events giving rise to this claim occurred in Boone County, Missouri. Therefore, venue is proper with this Court located in the Western District of the United States District Court of Missouri pursuant to 42 U.S.C. Section 1391 (b).

<u>**Facts Common to All Counts**</u>

15. At all times pertinent to this litigation, Defendants KENNETH M. BURTON, ERIC HUGHES, ROB SANDERS, ROGER SCHULDE and MICHAEL PALMER acted under the color of state law as police officers and were employed by the City of Columbia, Missouri.

16. At all times pertinent to this litigation, Defendants DANIEL K. KNIGHT, STEVEN BERRY, BRENT NELSON and SPENCER BARTLETT acted under the color of state law as county prosecutors and were employed by the county government of Boone County, Missouri.

17. All actions and omissions of Defendants KENNETH M. BURTON, ERIC HUGHES, ROB SANDERS, ROGER SCHULDE and MICHAEL PALMER and DANIEL K. KNIGHT, STEVEN BERRY, BRENT NELSON and SPENCER BARTLETT, as described below, arose out of and were performed in connection with their official duties as law enforcement officials.

18. At all times pertinent to this litigation, Defendants KENNETH M. BURTON, ERIC HUGHES, ROB SANDERS, ROGER SCHULDE and MICHAEL PALMER and the CITY of COLUMBIA, Missouri acted under the color of state law.

19. At all times pertinent to this litigation, Defendants DANIEL K. KNIGHT, STEVEN BERRY, BRENT NELSON and SPENCER BARTLETT and the county government of BOONE COUNTY, Missouri acted under the color of state law.

20. On May 09, 2010, Matthew Akins, was stopped at Columbia Police Department DWI check-point by Officer Eric Hughes and as a result, Mr. Akins was seized without probable cause, a firearm on his person when he was removed from his vehicle's passenger compartment, and he was then

arrested for felony possession of a firearm. Matthew Akins' .380 caliber Bersa pistol was seized even though, pursuant to RSMo. 571.030, Matthew Akins was lawfully in possession of his firearm at the time of the seizure, and, he committed no crime under Missouri or federal law with regard to that pistol. Further, Matthew Akins' vehicle was seized and impounded when there was no probable cause that he had committed any crime and nothing to suggest or warrant such a seizure of person or property.

21. At the time of this May 09, 2010, seizure, Missouri Law stated that in RSMo. 571.030.3 "... Subdivision (1) of subsection 1 of this section does not apply to any person twenty-one years of age …., transporting a concealable firearm in the passenger compartment of a motor vehicle." Therefore, pursuant to Missouri law Mr. Akins could legally conceal a firearm on his persons while he was within a motor vehicle.

22. The Sworn Probable Cause Statement executed by CPD Officer Eric Hughes stated Matthew Stephen Akins, D.O.B. 09/22/1988, was stopped at a DWI checkpoint when his vehicle was stopped and he was seized with "...a concealed, fully loaded, handgun that was capable of immediate use, which was on Akins' waistband under his shirt." Assistant Boone County Prosecutor Steven Berry signed a criminal complaint alleging that Matthew Akins had committed the D Felony of Unlawful Use of a Weapon by concealing a firearm upon his person. As a result, a crime case number 10BA-CR02245 was filed in the Circuit Court of Boone County, Missouri.

23. The case charged in 10BA-CR02245 was dismissed by filing of Nolle Prosequi in November 2010, and possession of Matthew Akins Bersa 380 pistol was maintained by the Columbia Police Department pursuant to the recommendations of the Boone County Prosecutor's Office.   Despite numerous requests for the return of his firearm during the time period from May 09, 2010, until April 15, 2013, Mr. Akins' firearm continued to be wrongfully held. Specific requests for the return of Akins' pistol were also made to Chief Kenneth Burton and Daniel Knight after which they continued to wrongfully hold this pistol without cause or a due process hearing. and

24. In late May or early June 2010, the month following the above incident, CPD Officer Thomas Quintana seized Matt Akins via a traffic stop over for the purported reason to "check his tints" on his windows. Matt Akins informed him that he had a Ruger 10/22 rifle in the back seat of his vehicle. Officer Quintana falsely claimed to observe a "crumb" of marijuana in the vehicle and that authorized him to search Mr. Akins vehicle and thereafter continued to detain Mr. Akins and searched the vehicle without consent or a warrant. No charges were filed.

25. June 06, 2010, Columbia Police Sergeant Roger Schulde stopped Matt Akins for a valid traffic violation (an illegal turn) and was informed by Matt Akins that he had a Ruger 10/22 rifle in the back seat of his vehicle. Sergeant Schulde ordered Matt Akins and his passenger out of the vehicle,

placed them in handcuffs, and made them sit on the curb for thirty to forty-five minutes while he and his partner searched the vehicle without consent or a warrant. When Matt Akins asked about the protocol of informing police that he had a weapon in his vehicle, Sergeant Schulde said, "It depends on the officer. Some officers would see a gun in the back seat and pull their gun out and shoot you. BAM, You're dead! And do you know what they would say in court? Do you know what they would say in court ? They would say 'Well, there was a gun found in the back seat and it would be dismissed. Just like that!" These comments by Columbia Police Sergeant Schulde were understood as a threat against all citizens whom exercise their lawful Second Amendment and Missouri law rights to maintain a firearm in their vehicle.

26.   On or about July 27, 2011, after finishing a Citizens for Justice report, Matthew Akins and Prince Carter were completing their journalistic reporting activities when Columbia Police Officer Rob Sanders (K-9 Unit) made a U-Turn.  Officer Sanders, in his patrol car, made a U-Turn and began following these two reporters, making lane changes and turning into Taco Bell, and following them up to the drive-thru window.  It was at this time when Officer Sanders parked his vehicle. Then two more Columbia Police Department patrol cars entered the Taco Bell parking lot.  After receiving his food, Mr. Akins parked his car in the parking lot. Then, Officer Sanders approached and demanded to see Mr. Akins' and Mr. Carter's identifications. When asked what his probable cause was to effect the seizure, Officer

Sanders' replied, " I don't have to have probable cause." It was at this time when he took their requested identifications and departed to return to his vehicle while Officer Hedrick interacted with the two reporters. Without a probable cause of an offense, CPD Officer Rob Sanders seized Matthew Akins, detained him, and violated his Fourth Amendment rights, and

27. The video report of this incident is aired by "Citizens For Justice." The Columbia Police Internal Affairs Department conducted an investigation and reprimanded Officer Sanders as a result of this incident. Contemporaneously with this action Officer Sanders was discharged by the Columbia Police Department for assaulting a defenseless prisoner in-custody, and

28. In October, 2011, Matt Akins learned that posters with his picture and identifying information had been and were being displayed around the Columbia Police Department. The poster had a picture of Matt Akins and states: "Matthew Stephen Akins, 09/22/1988, Akins runs the cfjweb.ssos.us website. He has arrests in our system for weapons violations, including carrying a pistol concealed on his person. He is currently driving a silver Grand Prix Pontiac MO DD9 H1T." This poster targeting Matt Akins for unwanted police attention was in retaliation for his exercise of his First Amendment rights and placed him at greater risk of police misconduct.

29. Matthew Stephen Akins went public with the website and multi-media platform called, "Citizens For Justice" in April 2011, reporting law enforcement interactions with the public, with a focus on police misconduct

engaged in by the Columbia Police Department. The project had been under-development since June 06, 2010, and in December 2010 The Columbia Police Officers Association contacted the web designer to advise the designer that they were aware of his actions in assisting with this public forum being developed.

30. On October 14, 2011, Columbia Police Officer Eric Hughes threatened to issue a $2,500 fine citation to Andrew Koerper, the Manager of Salty's Nightclub for allowing Matt Akins to continue his employment for Salty's as a videograher after 1:30 P.M., despite it being legal for bar employees to be on site after that time. The subsequent "Sunshine Law" request made to obtain a copy of electronic recording of this interaction was met by the Columbia Police Department's response that the equipment had malfunctioned on the police recording of the incident. And

31. On October 16, 2011, Columbia Police Officers target Matt Akins and his brother by their vehicle search light "spot lighting" them as they came out of Salty's Nightclub.

32. On September 11, 2012, Matthew Stephen Akins, while on assignment for "Citizens For Justice," was subjected to another traffic stop and then arrested for the felony of Unlawful Use of Weapon a D Felony (571.030(1)) and the misdemeanor of Unlawful Possession of Prohibited Weapon (571.020(6)(d)) by Columbia Police Officer Michael Palmer. Officer Palmer prepared a Sworn Probable Cause Statement that reported: "*During a search*

*incident to arrest, a "butterfly" knife was found to be concealed in Akins'
right front pants pocket. The knife is designed to be opened from the handle
by gravity or by the application of centrifugal force.*" The "butterfly" knife
seized from Matthew Akins that day was slightly longer than five inches
when closed with a blade less than four inches. It has a locking latch that
must be manually released before the blade may be opened, a description
that was verified by the Columbia Police Department evidentiary
photographs.

33.  Missouri law in effect in September 2011, pursuant to RSMo 571.010

(12) "Knife", any dagger, dirk, stiletto, or bladed hand instrument that is
readily capable of inflicting serious physical injury or death by cutting or
stabbing a person. For purposes of this chapter, "knife" does not include any
ordinary pocketknife with **no blade more than four inches in length; …**

(20) "Switchblade knife"**,** any knife which has a blade that folds or closes
into the handle or sheath, and**:** (a) That opens automatically by pressure
applied to a button or other device located on the handle; or

(b) That opens or releases from the handle or sheath by the force of gravity
or by the application of centrifugal force**.**  Further pursuant to RSMo.
571.020.4(d) it is only illegal to possess a "switchblade". In addition, even if
the weapon was prohibited to conceal outside a vehicle or home, it would
not be illegal to conceal by Akins within his motor vehicle under RSMo.
571.030.3 provides: "3. Subdivisions (1), (5), (8), and (10) of subsection 1 of

this section do not apply when the actor is transporting such weapons in a nonfunctioning state...Subdivision (1) of subsection 1 of this section does not apply to any person twenty-one years of age or older or eighteen years of age or older and a member of the United States Armed Forces, or honorably discharged from the United States Armed Forces, transporting a concealable firearm in the passenger compartment of a motor vehicle ...or is traveling in a continuous journey peaceably through this state."

34. Assistant Boone County Prosecutor Brent Nelson filed a complaint against Matthew Akins, citing Officer Palmer's September 11, 2012, Probable Cause Statement which alleges Unlawful Use of Weapon by possession of the butterfly knife in Boone County case number 12BA-CR03890. Subsequently, said weapons offenses were dismissed,

35. September 12, 2012, Columbia Police Officer Michael Palmer stopped Matt Akins without probable cause and issued Mr. Akins a citation for driving without a license. Mr. Akins at the time of the stop was working for Citizens for Justice as related to the court-hearing of Jesus Pereida. During the search, Officer Palmer found a butterfly knife, which is legal under Missouri and federal law, but Officer Palmer prepared a "Probable Cause Statement" charging Matt Akins with the felony offense of Unlawful Use of a Weapon and the Misdemeanor of Possession or Sale of Certain Weapons Prohibited. , It should be noted that those laws have no relation to this "butterfly knife" as permitted under both state and federal law. The Boone

County Prosecutor's Office wrongfully filed these weapons related charges in 12BA-CR03890, and Matt Akins was forced to retain counsel and attend court hearings before these weapons allegations were dismissed.

36.  On February 05, 2013, Plaintiffs Allan Rodgers, Gregory Rodgers, Robert Franklin and Raymond Franklin filed a civil rights violations case for the violations of their First Amendment, Second Amendment and due process rights against Defendants in this instant matter of Daniel Knight, Kenneth Burton, City of Columbia and Boone County Governments in the Western District of the United States Court for Missouri in case # 2:13-cv-04033-NKL. On May 06, 2013, Plaintiffs filed a request for leave of the court to amend the pleadings and add Matthew Akins as a Co-Plaintiff and additional Columbia Police Officers as Defendants. This Motion was opposed by Defendants and on July 08, 2013, the motion to add Matthew Akins as a Co-Plaintiff was denied by the Court. and

37.  On September 07, 2013, while accompanying his then girlfriend Samantha Crockett to pick up her children from the father of one of her children, Charles Powell , there was an incident. Prior to the child pick-up, Mr. Powell threatened violence against Ms. Crockett and Mr. Akins. During the child pick-up, when Mr. Powell observed Mr. Akins near the back door of the vehicle parked on the street , he became agitated and attempted to wrongfully re-take custody of the children. Mr. Powell became belligerent towards Ms. Crockett.  Mr. Akins requested that Mr. Powell remain calm and

not attempt to forcibly gain custody of the children. It was at this time that Mr. Powell came over and struck Mr. Akins. Mr. Akins then took his pistol in hand and again advised Mr. Powell to stay calm and don't hurt anyone. Mr. Powell became increasingly agitated by the presence of the pistol and then repeatedly pushed Ms. Crockett, removed her children from the rear seat of the vehicle. He did this even though the passenger rear door was locked and the children had been secured in the back seat. Mr. Akins entered the rear passenger side door as they prepared to leave and Mr. Powell came and grabbed that door and attempted to assault Mr. Akins again. In self-defense Mr. Akins fired a shot from his Bersa .380 between Powell's legs to stop the second assault. As their vehicle departed the area, Mr. Akins was able to close the door. This incident was video recorded with audio by a neighbor of Powell's.

38. On September 08, 2013, Boone County Sheriff Deputy Patrick Richardson prepared a Sworn Probable Cause Statement that is substantially disproved by the video/audio recording of the event recovered by Deputy Seigel at 1815 hours on September 07, 2013, and

39. Boone County Prosecutor Spencer Bartlett filed a criminal complaint in 13BA-CR-03210 alleging that Matt Akins unlawfully in Count I committed the B Felony RSMo 571.030.9 shooting by shooting from a motor vehicle while not acting in lawful self-defense; Count II RSMo. 571.015 Armed Criminal Action an unclassified felony with a range of punishment from 3

years to life in prison; Count III RSMo. 571.030.1(4) Unlawful Use of Weapon a D Felony for exhibiting a firearm "in an angry or threatening manner"; Count IV RSMo. 568.045 Class C Felony of Endangering the Welfare of Child by shooting a firearm in close proximity. The bond for these allegations was set at $100,000.00 cash only. Matt Akins was held in custody at the Boone County Jail and/or was placed on home detention for over a year before the charges were ultimately dismissed.

40. Instant counsel for Matthew Stephen Akins attempted to contact Boone County Prosecutor Knight to inform him that the multi-million dollar motive to prosecute Mr. Akins as related to his civil rights violations that he had attempted to join with the claims to the Rodgers and Franklin cases his claims were still valid and that provided an inherent conflict of interest to his office prosecuting of Mr. Akins and required the appointment of a special prosecutor. After failing to receive a response, an email asserting the conflict of interest by the Boone County Prosecutor's Office was sent to Mr. Knight's civil attorneys Glen Ehrhardt and Elizabeth Weber in August 2014. A responsive communication email was sent by Ms. Weber on August 14, 2014, stating that the assertion of a conflict of interest in the prosecution of Matthew Akins had been passed along to Mr. Knight.

41. The above charges in paragraph #39 were dismissed in Mr. Akins favor.

## PATTERN AND PRACTICE OF FABRICATED WEAPONS CHARGES AND RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHTS

42. On or about 12/15/2008, after Robert Franklin refused to grant consent for the search of his home. Columbia Police Officer Geoffrey Jones legally entered Robert's home with a warrant for drugs and illegally seized twelve firearms, including shotguns, rifles and pistols, asserting all firearms are evidence of drug trafficking of these firearms located in Honorably Discharged U.S. Army veteran Robert Franklin's (no legal disability for Robert's lawful possession of firearms) residence at 1670 Sonora Drive, in the City of Columbia, Missouri, in Boone County, after Officer Jones had assisted in the arrest William "Billy" Rogers outside of Robert's home.

43. During the search of Robert Franklin's residence a 45 caliber Vulcan pistol, Serial Number F10691, legally owned by Robert Franklin, was found in a locked room in proximity to items of years old mail with Robert Franklin's son, Raymond D'Sean Franklin's, name on them. Robert Franklin had obtained a permit for the acquisition of a concealable firearm No. 07-20452 from the Boone County Sheriff on February 21, 2007, which was used to purchase this firearm from the Paris Road Family Pawn on 02/22/2007.

44. On 09/10/2007, Raymond D'Sean Franklin plead guilty to the felony of possession of a controlled substance and was given a four year sentence. The

sentence was suspended, and Raymond Franklin was placed on supervised probation for a period of five years. Raymond Franklin had his probation supervision transferred to the state of North Carolina in 09/2008, and relocated there immediately. Raymond Franklin was residing in North Carolina on 12/15/2008.

45. On 06/30/2010, Boone County Prosecutor Daniel K. Knight acted with his First Assistant Prosecutor Richard Hicks to file a felony complaint against Raymond D'Sean Franklin, in Case No 10BA-CR02981, alleging that, as a felon, Raymond Franklin unlawfully possessed Robert Franklin's legally owned firearm by having mail with his name on it in a locked room under the control of his father in proximity to his father's firearm. A fifty thousand ($50,000) dollar bond was set with the arrest warrant issued for Raymond Franklin on this allegation.

46. Raymond and Robert Franklin were forced to pay five thousand ($5,000) dollars to a bondsman to post the bond and incurred an additional forty-five hundred dollars ($4,500) in legal fees to defend this malicious prosecution. Daniel K. Knight and Richard Hicks resisted motions to dismiss for lack of any evidence of possession of this firearm by Raymond Franklin . They pursued this matter through preliminary hearing and subsequently to jury trial settings.

47. Raymond Franklin's probation was revoked citing this alleged violation of Missouri law as a basis for the revocation., His sentence in the 2007 drug

charge was re- imposed, and he was incarcerated in the Missouri Department of Corrections.

48. For the purpose of delaying Raymond Franklin's parole consideration, Daniel K. Knight and Richard Hicks delayed the resolution of the weapons case. Even after a speedy trial motion had been filed by Raymond Franklin, Richard Hicks additionally sought a continuance(s) purportedly for the purpose of obtaining lab tests to tie Raymond Franklin to his father's lawfully owned firearm. Said continuance(s) were granted over objection, even though no tests exist that could distinguish if Raymond Franklin had touched the firearm between the period of his father's acquisition on 02/22/2007 and his felony conviction on 09/10/2007, or thereafter.  Therefore, these alleged tests would have had no probative value - a fact which Richard Hicks was aware of and had received subsequent communication regarding from Raymond Franklin's defense counsel. Even after this communication about the value of the tests had taken place, Richard Hicks sought additional continuances for these lab tests. These continuance requests were made to intentionally delay the trial setting and impede Raymond Franklin's eligibility for parole while the pending felony charge existed.

49. On 04/21/2011, Richard Hicks, after being denied an additional continuance of the jury trial, filed Nolle Prosequi dismissing the illegal possession of a firearm charge against Raymond Franklin.  Subsequently

Raymond Franklin was granted parole on the 2007 drug charge and released from prison.

50.  In deposition Richard Hicks admitted that Robert Franklin's refusal to grant consent to law enforcement to search his home on 12/15/2008, was a consideration in the prosecution of his son Raymond Franklin for illegally possessing his father's legal firearm from North Carolina by the presence of old mail in his father's home.

51. Repeated requests were made to the Columbia Police Department to return Robert Franklin's property seized on December 15, 2008, The Columbia Police Department stated they could not release the property without the authorization of Daniel K. Knight, the Boone County Prosecuting attorney, or a subordinate in his office.

52. Repeated requests were made to Daniel K. Knight at his office to authorize the Columbia Police Department to release Robert Franklin's property.  Responding on his behalf, Mr. Knight's subordinate investigative staff said any release of the weapons would have to be delayed for months time and again. On  August 23, 2012, when the Columbia Police Department released: A 20 gauge (Ga.) Shotgun; a Westernfield 12 Ga shotgun; a 30.06 rifle; a Maverick 12 Ga. Shotgun; a Sears 12 Ga. Shotgun; a 7.65 rifle; a Henry Arms 12 Ga. Shotgun; a highpoint 40 caliber pistol; a Taurus 9 MM pistol and other property to an authorized agent of Robert Franklin.

53. On January 28, 2011, Gregory Allan Rodgers was forced to take evasive action to avoid a traffic accident at the same intersection where he had had a severe collision resulting in injuries years before. After avoiding this accident Gregory Rodgers communicated to the other driver his concerns about the other driver's excessive speed and running the stop sign. Gregory Rodgers thereafter called 911 seeking police assistance after being assaulted by a male bystander and informed the dispatcher he had a C.C.W. Permit and had firearms.

54. City of Columbia police officers Mike Valley, Mark Brotemarkle, and Kyle Lucas responded to the scene of the incident.

55. Officer Valley admonished Gregory Rodgers for communicating with the driver, and advised Gregory Rodgers that if the other driver had felt threatened by his communication Gregory Rodgers would have been arrested. Officer Brotemarkle asked for Gregory Rodger's drivers' license. Gregory Rodgers presented his license and his valid concealed carry (C.C.W.) permit issued by the State of Florida as well.

56. Officer Valley inquired about the C.C.W. permit arguing that Gregory Rodgers should not have had a C.C.W. permit stating "I thought we got you ruled a dangerous person. I thought you were not supposed to have guns."

57. Gregory Rodgers requested that the man who had assaulted him be arrested, but the police officers refused. Officer Valley stated to Gregory Rodgers that they were done . Then, Officer Brotemarkle returned Gregory

Rodgers' drivers' license and his Florida Concealed Carry Permit valid in Missouri.

58. As Gregory Rodgers turned to leave and was getting back into his vehicle, Officer Brotemarkle assaulted him from behind. Officer Kyle Lucas claimed that Gregory Rodgers' CD case in his car appeared to be a gun—his justification for the assault.

59. On 01/28/2011, a few minutes after the incident with officers Brotemarkle and Lucas, Gregory Rodgers called the Columbia Police Department to speak with the direct supervisor of these officers. Gregory Rodgers spoke with Officer Sgt. Daniel Beckman and informed him about what happened . Mr. Rodgers complained to Officer Sgt. Beckman about the conduct of these officers. Gregory Rodgers initiated a complaint with the Columbia Police Department about the actions of these officers and the matter was referred to Sergeant Lloyd Simons of the internal affairs section for investigation. Sgt. Simons was a good personal friend and former roommate to Officer Brotemarkle.

60. Gregory Rodgers had to seek medical treatment on 01/29/2011 and 02/08/2011, and thereafter, for injuries inflicted upon him on 01/28/2011, by Officer Brotemarkle, including cervical and thoracic strain and dysfunctions.

61. Gregory Rodgers was involved in a traffic collision on May 11, 2011, was issued a ticket by Columbia Police Department officers and a court date was set in municipal court on the matter. Gregory Rodgers was denied a

continuance on that setting, and a warrant was ordered for his failure to appear on July 18, 2011, with a five hundred ($500) dollar bond.

62. Prior to this July 18, 2011 court date, members of the Columbia Police Department engaged in ex parte communication with Municipal Judge Aulgur alleging that Gregory Rodgers had threatened to kill Judge Aulgur, blow up the police department and harm police officers, despite the deposed admissions of Detective Liebhart that these allegations lacked any probable cause to believe. Judge Aulgur entered an order on July 14, 2011, that no continuances were to be granted to Gregory Rodgers for any reason.

63. On July 18, 2011, Gregory Rodgers had a heart incident and went to the Boone Hospital Emergency Room. The court file in this matter had a Dr.'s note from Larry Scroggins, M.D. Dated 07/18/2011, requesting the court grant an "excuse" for Gregory Rodgers form his court date due to evaluation and treatment for "chest pain" in the emergency department. That request for a continuance was not granted by the municipal court.

64. In deposition, Detective Liebhart admitted there was **no** "**probable cause**" to believe the allegations that Gregory Rodgers was going to kill Judge Aulgur, blow-up the police department or harm police officers as alleged in paragraph #61 above, but, these allegations were widely disseminated and included in a sworn "probable cause" affidavit by Detective Liebhart to obtain search warrant for Gregory Rodgers' residence.

65.  In deposition, Detective Liebhart admitted that Gregory Rodgers' misconduct complaint against Officers Brotemarkle, Valley and Lucas was the "catalyst" for all the Columbia Police Department actions culminating in his August 2011, arrest and the seizure of his and his father's firearms from their property.

66. In early August 2011, when Gregory Rodgers was discussing his complaint against Columbia Police Department Officers Brotemarkle, Lucas and Valley with Sergeant Lloyd Simons (former roommate of Brotemarkle), Mr. Rodgers informed Sergeant Simons that he had recently become aware by letter of the municipal warrant for missing his July 18, 2011court date and would be taking care of it in the near future.

67. In retaliation for Gregory Rodgers' exercise of his First Amendment right "to petition the government for a redress of grievances" through his complaint against Officers Brotemarkle, Lucas and Valley, Sgt. Simons alleged that Gregory Rodgers intended to resist arrest.  Sgt. Simons alleged to other Columbia police officers that Gregory Rodgers was dangerous and intended to resist arrest. This allegation was such that it could have been used to provide a justification for the use of lethal force in retaliation for Plaintiff Greg Rodgers' complaint against the Columbia Police Officers.

68. On August 12, 2011, Columbia Municipal Court Judge Robert Aulgur authorized the enforcement of the Warrant in MU6M11-3900 MT – the traffic case against Gregory Rodgers for which he had missed his court date

on July 18, 2011. The Court's record, paragraph #3, states *"The court has been informed by the Columbia, Missouri Police Department that the defendant made threats of physical violence against judges presiding over divisions of the Thirteenth Judicial Circuit for the State of Missouri, an attorney who appears before those judges, and police officers who may attempt to serve the court's outstanding warrant for arrest."* The order provided notice to Gregory Rodgers to appear at 8:30 A.M. On August 19, 2011, unless brought before the court before then.

69. On August 12, 2011, at approximately 8:46 P.M, Officer Geoffrey Jones, while undercover in plain clothes and pretending to look for a lost dog,. made contact with Gregory Rodgers outside of Mr. Rodgers' residence.

70. While speaking to Officer Jones, Gregory Rodgers noticed a marked Columbia Police Dept patrol car occupied by Officer Quintana and Officer Moroney heading towards his location. At that time, Gregory Rodgers declared his intent to return to his residence and began trotting towards his home. Detective Jones, from behind Gregory Rodgers, then yelled "Police, Stop". Gregory Rodgers immediately stopped, dropped a screw driver and wire-cutter, and then dropped his pistol to his side away from his body. Mr. Rodgers slowly assumed the prone position, informing Officer Geoffrey Jones behind him that "he gave up" and was not now armed. Gregory Rodgers was then taken immediately into custody. Gregory Rodgers

informed Officers Jones and Quintana that his valid Florida C.C.W. permit was inside his residence.

71. Officer Quintana prepared a sworn probable cause statement alleging that Gregory Rodgers was illegally carrying a concealed firearm, a C Felony under RSMo. 571.030. Officer Quintana noted that Gregory Rodgers' Missouri C.C.W. permit had expired on October 20, 2007, but made no reference to the valid C.C.W. permit issued by the state of Florida to Gregory Rodgers that is granted reciprocity under Missouri law.

72. The Boone County Prosecutor's Office submitted a bond Memo to the on-call Judge requesting that bond for this charge be set at fifty thousand ($50,000) dollars. The bond Memo included allegations that Gregory Rodgers "has threatened law enforcement,"the Defendant ran from officers," and "The Defendant possessed a concealed weapon illegally."Subsequently Judge Kevin Crane set the bond on these charges at fifty thousand ($50,000) with the special bond condition that Greg "not possess any weapons".

73. CPD Detective Brian Liebhart prepared a sworn warrant affidavit in which he recited anonymous "Crimestopper calls" on August 09, 2011 and August 12, 2011. According to the affidavit, the anonymous caller stated that Gregory Rodgers had "armor piercing bullets and will open fire on the police if they attempt to arrest him". …[he is] armed with an M-16, … [he] intends to blow up the Columbia Police Department." and "... has expressed a desire to kill the Judge and the police if there is an attempt to arrest him."

The illegal activity alleged failed to provide objectively reasonable probable cause as the justification cited for the warrant, as to the offense of "unlawful possession of a firearm".

74. While the warrant affidavit was being prepared, Gregory Rodgers was in custody under arrest for the municipal warrant and about to be arrested for the fabricated allegation of unlawfully concealing a firearm during his arrest on that municipal warrant. The felony of carrying unlawfully on his person a concealed firearm under RSMo 571.030.1(1), notwithstanding his valid concealed carry permit issued by the state of Florida nor the provision of RSMo 571.030.3 which provides an exemption permitting the lawful concealment of a firearm when a citizen "...*is in his or her dwelling unit or upon premises over which the actor has possession, authority or control*."

75. On or about August 12, 2011, Gregory Rodgers was arrested on a municipal court warrant for failure to appear on a traffic matter by the Columbia Police Department. Despite Gregory Rodgers being the holder of a valid concealed carry permit issued by the State of Florida, he was charged with unlawful possession of a firearm. Gregory Rodgers posted bond on both the Municipal matter. The new charge of illegally concealing a firearm on his person was [removed] and Mr. Rodgers was released from custody after being held from Friday, August 12, 2011, until August 15, 2011.

76. After the arrest of Gregory Rodgers on August 12, 2011, Columbia Police Detective Brian Liebhart executed a warrant affidavit alleging it was

"unlawful possession of a firearm" if firearms and/or ammunition were owned or possessed by Gregory Rodgers. Officer Liebhart cited anonymous "Crimestopper" report(s) made on August 09, 2011 and August 12, 2011 from an unknown informant with no history of having previously provided reliable information as the principal basis of his affidavit. In addition, he cited Columbia Police Sergeant Lloyd Simons, as indicating that Gregory Rodgers would resist the arrest recently completed related to the Municipal Warrant for failure to appear on the civil ordinance violation.

77. The Honorable Judge Kevin Crane, based upon the warrant affidavit prepared by Detective Liebhart and approved by Boone County Prosecutor Morrell, did in fact approve and authorize this warrant for the search and seizure of firearms and ammunition at "*1607 Windsor Street, Apartment 8*" with no limitation to as to the particular firearms that could be seized. This took place despite the fact that there was no legal or relevant basis to find sufficient evidence for "probable cause" to issue this warrant for the allegation of "unlawful possession of a firearm" and/or that Gregory Rodgers was not legally entitled to possess his firearms and ammunition,

78. On or about the early morning hours of August 13, 2012, Columbia Police Officer Brian Liebhart, assisted by other members of the Columbia Police Department, executed this warrant at Gregory Rodgers' residence located at 1607 Windsor Street, Apartment 8, Columbia, MO 65201. Outside the warrant's authorization , the officers searched other property

located nearby and seized items there from, including a 12 gauge (ga) Beretta, 3 Kel Tec 32 pistols , Remington 87 12 ga., Remington 12 ga, an AR-15, Weatherby Mark VI 33 MAG Bolt Action, Marlin 22 Bolt Action, JC Higgins 20 Ga, and assorted magazines and ammunition

79. Prior to August 11, 2011, Gregory Rodgers had filed complaints against various Columbia police officers for misconduct and had been interviewed by Columbia Police Department Internal Affairs Sergeant Lloyd Simons.

80. Defendant Kenneth M. Burton was at all times pertinent to this matter the Chief of the Columbia, Missouri Police Department and supervised Officers Rob Sanders, Eric Hughes, Roger Schulde, Micheal Palmer, Brian Liebhart, Thomas Quintana, Geoffrey Jones, Kyle Lucas, Mike Valley and Sgt. Lloyd Simons as his subordinate officers.

81. Gregory Allan Rodgers and Allan Rodgers made repeated requests to Defendants jointly and/or separately for the return of their wrongfully seized and detained firearms and/or other property for over a year, which were refused by the Defendants. Several items listed above were returned to Allan Rodgers on September 21, 2012, and several other items were returned to Gregory Rodgers on October 22, 2012, but Defendants maintained possession of the 9 mm pistol belonging to Greg Rodgers which was seized when he was arrested on the municipal warrant, and

82. Defendant City of Columbia illegally seized and detained several lawfully owned firearms belonging to Robert Dewayne Franklin on or about

December 15, 2008, including a Vulcan V10.45 handgun, that was found in proximity to personal correspondence addressed to Raymond D'Sean Franklin, his son, living in North Carolina who was a convicted felon and who was by the authority of Defendant Daniel K. Knight, Boone County Prosecutor, charged with the felony of unlawful possession of a firearm in cause # 10BA-CR02981.

83. Defendant City of Columbia Police Department conspired with Defendant Daniel K. Knight and his subordinate prosecutors to deny Robert Dewayne Franklin the return of his lawfully owned firearms, and, at least through August 20, 2012, refused to return any of Robert Franklin's lawfully owned guns to his possession.

84. Defendant City of Columbia has a pattern and practice of targeting those critical of police conduct with retaliatory action. Matthew Akins was targeted with a "**wanted poster**" displayed at the Columbia Police Department. Matthew Akins who operates "Citizens for Justice" was targeted for unjustified police attention because of his exercise of his First Amendment right as a journalist. He was targeted because he simply wanted to report Columbia police officers activities and petition his government for the redress of grievances related to their conduct, and

85. Gregory Rodgers was targeted with retaliatory action for his exercise of First Amendment speech rights and filing complaint(s) against Columbia police officers alleging misconduct as guaranteed by his First Amendment

right to petition his government, the City of Columbia, for the redress of grievances.

86. On or about October 27, 2005, Columbia Police Officers Nathan Baer and Scott Decker, responding to a disturbance complaint, encountered Paula Lee at the front door of her house on 408 N. Williams Street in Columbia Missouri. And then they requested to speak to Dr. Christopher Lee, PhD. And these officers determined the disturbance was verbal marital argument and no law had been broken. These CPD Officers asserted it was department policy to search all homes in which a disturbance complaint had been made. Upon denying consent to search unless a warrant was provided, these Officers did assault the Lees, an assault that included smashing Mrs. Lee in the head with a police Mag-light and as a result causing a bloody head wound. Dr. Lee was then arrested for resisting arrest for requesting a warrant.   Charges were filed by the Boone County Prosecutor's office. After depositions and on the eve of a jury trial, the charge was dismissed and civil rights lawsuit subsequently filed and settled to the Lee's benefit.

87. Due to the acts and/or omissions of the Defendants, the Plaintiff has incurred medical and/or counseling expenses.

88. Due to the acts and/or omissions of Defendants and/or unknown Columbia police officers, defamatory allegations were conveyed with regard to Plaintiff Matthew Akins which impaired and/or undermined his business relationship.

89. Due to the acts and/or omissions of the Defendants, the Plaintiff(s) have incurred monetary loss.

90. Due to the acts and/or omissions of the Defendants, the Plaintiff has been deprived of the use of his personal property.

91. Due to the acts and/or omissions of the Defendants, the Plaintiff Matthew Stephen Akins has endured loss of enjoyment of life, loss of sleep, symptoms of post-traumatic stress, inconvenience, personal humiliation, nervousness and suffering, fear, hyper-vigilance, pain and suffering, mental anguish, emotional damages, attorney fees and bond fees, as well as the loss of business opportunities.

92. Defendant City of Columbia, either by affirmative acts or omissions, had in place policies, practices, procedures and/or guidelines that violated or led to the violation of the Constitutional rights of Matthew Stephen Akins and numerous other citizens including Gregory Allan Rodgers and/or Allan Rodgers and/or Robert Franklin and/or Raymond Franklin.

93. Defendant City of Columbia, either by affirmative acts or omissions, had in place policies, practices, procedures and/or guidelines that violated or led to the violation of the Constitutional rights of Plaintiff Matthew Stephen Akins, and Robert Franklin and/or Raymond D'Sean Franklin, Gregory Rodgers and/or Dr. Allan Rodgers and/or Dr. Christopher Lee and numerous other similarly situated citizens.

94. Defendant Boone County, Missouri, either by affirmative acts or omissions, had in place policies, practices, procedures and/or guidelines that violated or lead to the violation of the Constitutional rights of Matthew Stephen Akins.

95. Color of State Law

All defendants were acting under Color of State law during all times set out herein, specifically at the times the Federal and State Constitutional rights of the Plaintiff were violated. Since the allegations in the various counts which follow relate to one another, Plaintiff incorporated into each respective count the contents of the allegations in the other respective counts.

96. Deprivations and Violations of Rights

Due to the acts and/or omissions of the Defendants, the Plaintiff seeks damages for committing acts under color of law, which deprived Plaintiffs of rights secured under the Constitutions and laws of the United States and of the State of Missouri, to wit:

a. For committing such acts in violation of those Constitutions and laws; and

b. For violating the customs and usages of the State of Missouri; and

c. For violating the rights, privileges and immunities secured to them by the Constitutions and laws of the United States and the State of Missouri; and

d. For violating the rights to security of person and freedom from unreasonable search and seizure and arrest and excessive force and malicious prosecutions as guaranteed by the First, Second, Fourth, Fifth,

Sixth and Fourteenth Amendments to the Constitution of the United States and similar provisions of the Missouri State Constitution; and

e. For violating the rights not to be deprived of life, liberty and the pursuit of happiness without due process of law- both as to procedural due process and substantive due process- as well as their right to access the courts for fair litigation, all as guaranteed by the First, Second, Fourth, Fifth, Sixth, Seventh and Fourteenth Amendments to the United States Constitution and similar provisions of the Missouri Constitution; and

f. For violating the due process and/or equal protection of the law and equal privileges under the law, guaranteed by the Fourteenth Amendment to the United States Constitution and similar provisions of the Missouri State Constitution; and

g. For violating the property rights of gun owners as guaranteed by the Second and Fourth Amendments to the United States Constitution and similar provisions of the Missouri State Constitution; and

h. For refusing or neglecting to prevent such deprivations and denials to the Plaintiffs; and

i. For using excessive force upon Plaintiffs in violation of his Constitutional rights; and

j. For their wrongful, intentional, reckless and/or negligent conduct.

97. Defendants and/or the City of Columbia are further liable for their failures to train, instruct, supervise, control and discipline the individual law enforcement officers on a continuing basis, to wit:

a. Said failures were the result of official policy and/or the customs, practices, usages of the defendant government entities.

b. Said failures were the result of the deliberate indifference of the policy makers toward the rights of the citizens and Plaintiffs involved herein.

98. Defendant Police Officers are further liable for their failures to take the opportunity presented to intercede on the behalf of the Plaintiff and prevent other defendants from subjecting the Plaintiff to the use of excessive force and an unlawful and unreasonable seizure of their persons and/or property as well as an unlawful searches of their homes and vehicles in violation of the laws and Constitutions of the United States and the State of Missouri.

99. Defendants and/or the County Government of Boone County, Missouri are further liable for their failures to train, instruct, supervise, control and discipline the individual law enforcement officers on a continuing basis, to wit:

a. Said failures were the result of official policy and/or the customs, practices, usages of the defendant government entities.

b. Said failures were the result of the deliberate indifference of the policy makers toward the rights of the citizens and Plaintiff involved herein.

100. Joint Venture, Joint and Several Liability and Conspiracy

a. Defendants acted together in a joint venture and are jointly and severally liable to Plaintiff. Plaintiff alleges that the actions of the Defendants described herein were the actions of persons conspiring together, all being conspirators engaged in a scheme and conspiracy to deny and to deprive plaintiff of rights guaranteed to them under the Constitution and laws of the United States and of Missouri and particularly those enumerated in this Complaint. The conspiracy included, but was not limited to, the use of excessive force and the unlawful detention and restraint of personal freedom and unlawful seizure and detention of property. The defendants combined and acted in concert by way of an agreement to inflict wrongs against/ injuries upon the plaintiff. Their agreement also included the covering up of their acts of police abuse described herein.

b. The purpose of conspiring was to deprive, either directly or indirectly, plaintiff of the equal protection of the laws and equal privileges and immunities under the laws and their Constitutional rights.

c. The defendants acted in furtherance of the object of the conspiracy by making their various police reports and taking the enumerated actions against Plaintiff.

d. Plaintiff was injured in his persons and deprived of having and exercising his rights and privileges as a citizen of the United States and of Missouri, all as set forth herein.

e.The conspiracy extended to the completing and filing of false and misleading law enforcement reports after the events at issue so as to justify actions that were taken and so as to create an appearance that was not in accordance with the actual facts that took place.

f. The conspiracy extended to extending legally frivolous criminal proceedings to force Plaintiff to appear in court and deny his liberty to move unimpeded by government control or oversight.

g.The conspiracy extended to extending legally frivolous and/or malicious criminal proceedings for the reason of denying and/or negatively impacting protected journalistic activities by keeping a frivolous criminal allegation pending and continuing.

101. Exemplary Damages

All the acts of the defendants were willful, wanton, reckless, malicious, and further show a complete and deliberate indifference to, and conscious disregard for the safety and rights of plaintiffs. Therefore, plaintiffs are entitled to an award of exemplary damages, at least against the individual Defendants acting in their individual capacities.

**Count I – Violation of Plaintiff MATTHEW STEPHEN AKINS Constitutional Rights – Defendants Sanders, Hughes, Quintana, Burton, Schulde, Palmer, Knight, Berry, Nelson, the City of Columbia and the County Government of Boone County, Missouri**

102. Plaintiff MATTHEW STEPHEN AKINS hereby reincorporates and restates paragraphs 1 through **101** into this Count I as though fully set forth herein.

103. Defendants named in Count I by their acts and/or omissions did violate Plaintiff MATTHEW STEPHEN AKINS's Constitutional right to be free from unreasonable searches and seizures and/or the security of his person as provided by the Fourth and/or Sixth and/or Fourteenth Amendment(s) of the United States Constitution.

104. Defendants named in Count I by their acts and/or omissions did violate Plaintiff MATTHEW STEPHEN AKINS's Constitutional right to Keep and Bear Arms and/or the security of his person as provided by the Second Amendment of the United States Constitution.

105. Defendants named in Count I by their acts and/or omissions did violate Plaintiff MATTHEW STEPHEN AKINS's First Amendment Constitutional right by infringing upon the freedom of press, his free speech, freedom of association and/or to petition the Government for the redress of grievances and retaliated against him for his exercise of same in violation of his rights. And did further violate his rights by maliciously prosecuting him for his lawful activities.

106. Defendants named in Count I by their acts and/or omissions did violate Plaintiff MATTHEW STEPHEN AKINS's constitutional right to a civil jury trial by maliciously prosecuting him for seeking leave of the court by taking

part in a civil rights suit against Defendants Knight, Berry, Boone County, City of Columbia, Hughes, and Burton. By maliciously prosecuting Plaintiff Matthew Stephen Akins for his civil actions constitutes a violation of his rights as provided by the Fifth and/or Sixth and/or Seventh and/or Fourteenth Amendment(s) of the United States Constitution.

107. Defendants named in Count I by their acts and/or omissions did violate Plaintiff MATTHEW STEPHEN AKINS's Constitutional right to privacy and property and to keep and bear arms.

108. Defendants named in Count I by their acts and/or omissions did violate Plaintiff MATTHEW STEPHEN AKINS's Constitutional right to the due process of law.

109. Each of the rights described above are clearly established Constitutional rights.

110. As a direct and proximate result of the actions of Defendants in violating the rights of the Plaintiff MATTHEW STEPHEN AKINS, he suffered the previously mentioned injuries and damages.

WHEREFORE, Plaintiff MATTHEW STEPHEN AKINS prays this Court enter a judgment in his favor and against the Defendants named in Count I holding Defendants liable for the injuries and damages suffered by Plaintiff. Plaintiff further prays that this Court order Defendants to pay Plaintiff such sums as to fully and completely compensate him for the injuries and damages he has suffered as

previously outlined and for pre-judgment interest in an amount in excess of $2,435,000.00. (Two million four hundred and thirty-five thousand dollars)  Plaintiff further prays that this Court order Defendants to pay punitive damages in excess of eight million dollars ($8,000,000.00) to Plaintiff as Defendants' conduct is outrageous and exhibits conscious disregard and reckless indifference for the rights and safety of others.  Plaintiff further prays for an award of Attorney's fees as allowed by 42 U.S.C. Section 1988. Plaintiffs pray for all other relief that this Court deems reasonable and just.

Respectfully submitted,

WYSE LAW FIRM, P.C.

 _/s/ Stephen Wyse_____
Stephen Wyse, MO Bar# 49717
Admitted before the Western District U.S. Courts
609 E. Broadway
Columbia, MO 65201
(573) 449-7755, Fax (573) 449-7557
Attorney for Plaintiff MATTHEW STEPHEN AKINS